IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ALAN SINGLETON,<br><br>        Petitioner,<br><br>vs.<br><br>NEIL TURNER, in his official capacity as Warden,<br><br>        Respondent. | CASE NO. 1:19-CV-00249-BYP<br><br>JUDGE BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

On February 1, 2019, Petitioner Alan Singleton, a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF # 1). Respondent Neil Turner, in his capacity as Warden of the North Central Correctional Complex, filed a Return of Writ (ECF #10) on April 5, 2019, and Mr. Singleton filed a Traverse to Return of Writ (ECF #12) on May 6, 2019. The district court has jurisdiction over the Petition under § 2254(a). This matter was referred for a Report and Recommendation pursuant to Local Rule 72.2(b)(2) (non-document entry dated February 4, 2019), and was reassigned to me on May 26, 2021 pursuant to General Order 2021-06. (Non-document entry dated May 26, 2021).

Mr. Singleton also filed a Motion to Supplement the Record (ECF # 29), a second Motion to Supplement the Record (ECF # 31), and a Motion to Dismiss Supplement the Record (ECF # 32). As set forth below, I recommend the Petition be **DISMISSED** and the subsequent motions by **DENIED AS MOOT**.

## FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530.

In its opinion affirming Mr. Singleton's conviction, Ohio's Eighth District Court of Appeals summarized the underlying facts as follows:

> {¶2} Appellant was charged under a three-count indictment with rape, gross sexual imposition and, as amended, kidnapping with a sexual motivation specification. Appellant waived his right to a jury trial, and the case proceeded to a bench trial.
>
> {¶3} Prior to the start of trial, the court conducted a competency hearing of the victim, who was four years old. The court found the victim to be incompetent. The court then conducted a hearing on the state's notice of introduction of child victim's statements and determined that the victim's previous statements were admissible under Evid.R. 807.
>
> {¶4} At trial, the victim's mother, L.B., testified that appellant came to her home unannounced on December 30, 2014, to visit with the victim, who is his child. L.B. testified that at some point during the visit, appellant told L.B. he was hungry. L.B. went to prepare food and left appellant and the victim in the third-floor bedroom where they were watching television. By the time L.B. returned to the bedroom, appellant was the only one in the room and had fallen asleep for the night.
>
> {¶5} Appellant left the next morning, which was New Year's Eve. He told L.B. that he would be back and that she should go to the liquor store. L.B. bought a bottle of Zinfandel. Appellant did not return. L.B. stated that it was "up in the air," "he don't tell the truth," and that she was contemplating what she was going to do for the night.
>
> {¶6} According to L.B., that evening the victim went to her and said, "my dad do me like this" and described what appellant had done to her the previous evening. She took her fingers, put them down her panties, and made movements to demonstrate appellant's actions. The victim asked L.B., "is that bad?" L.B. testified that she was shocked. She testified she did not have a drink before the victim confided in her, but

opened the bottle of Zinfandel after the disclosure. The next day, the victim repeated to L.B. what happened.

{¶7} L.B. testified that she called appellant and he said, "maybe someone went too far this time * * * told her to say it was me." L.B. told appellant she was taking the victim to the emergency room.

{¶8} L.B. eventually took the victim to the hospital. The sexual assault nurse examiner who examined the victim testified to her examination of the victim and to her findings, which included swelling, redness, and damaged tissue. She testified that the injuries observed were consistent with digital touching. She also testified that "[c]hildren typically don't cause injuries like that themselves, because it is painful."

{¶9} An interview of the victim took place at the Cuyahoga County Division of Children and Family Services ("CCDCFS"). Present for the interview were the victim, L.B., a social worker from the Sex Abuse Intake Department of CCDCFS, and a detective with the East Cleveland Division of Police.

{¶10} The social worker testified that the detective took the lead in questioning the victim during the interview. He further testified that only one person was asking the questions in order to limit the trauma to the child and to eliminate any confusion during the interview. The social worker stated that the detective was able to elicit the same information he would be looking for to aid his referral in the case.

{¶11} The social worker testified that a drawing was utilized during the interview and the victim pointed to the vaginal area and stated appellant had touched her there with his finger. The social worker testified that his purpose in the interview was to determine the safety of the child and whether the child required any follow-up psychological, mental health counseling, or medical services. He further testified that in order to make this assessment, it was important to know where, and with what, the victim was touched. The social worker recommended that the victim be seen by rape crisis.

{¶12} The detective testified she told the victim the purpose of the interview was "just to find out what had happened, why she had to go to the hospital." L.B., who is the victim's mother, was also interviewed. Both the social worker and the detective testified that L.B. was interviewed after the victim had been interviewed. The detective also met with appellant and obtained a sample of appellant's DNA to compare it against the sexual assault kit.

{¶13} Appellant testified in his defense. He acknowledged visiting with the victim on December 30, 2014. He testified he wanted to spend time with his child. He stated that when he got to the house, he "sat on the couch, watched TV for a minute" and then decided he was tired and went upstairs to bed. He claimed the victim went upstairs and played for a couple of minutes, but he told her he was tired and she left. He testified the victim returned a little later with a plate of food. He testified that a song came on television, he was thinking of dance steps, and he "tap[ped] her on the

knee, 1-2-3, 4-5-6, 7-8" for three minutes. He claimed he gave the victim a kiss on the cheek, she left, and he went to bed. He stated he left for work in the morning. Appellant claimed that the victim was trying to convey the dance beat to L.B., but that L.B. misconstrued this and the victim probably just agreed with L.B.'s accusations. He claimed L.B. was "drunk" and was "mad" at him.

{¶14} The trial court found appellant not guilty of rape, guilty of gross sexual imposition, and guilty of kidnapping with a sexual motivation specification. The court determined the latter two offenses were allied offenses, and the state elected to proceed with sentencing on the kidnapping count. The court imposed a sentence of life with the possibility of parole after 15 years of time served.

*State v. Singleton*, 69 N.E.3d 118, 120-22 (Ohio Ct. App. 2016), *delayed appeal not allowed*, 104 N.E.3d 790 (Ohio 2018) (table); *see also* State Court Record, ECF #10-1, Exh. 16, PageID 228-30.

PROCEDURAL HISTORY

**State Court Conviction**

On March 24, 2015, by way of indictment, Mr. Singleton was charged with rape, gross sexual imposition, and kidnapping with specifications of sexual motivation and sexually violent predator. (State Court Record, ECF #10-1, Exh. 1, PageID 130-31). The trial court later granted the State's motion to amend the kidnapping count to remove the sexually violent predator specification. (*Id.*, Exh. 7, PageID 142). On April 6, 2015, Mr. Singleton pled not guilty to each count. (*Id.*, Exh. 2, PageID 132).

The State filed a Notice of Introduction of Child Victim Statements Pursuant to Evidence Rule 807. The trial court held a hearing and found the child victim incompetent to testify. (*Id.*, Exh. 4, PageID 139). Mr. Singleton waived his right to a trial by jury. (*Id.*, Exh. 5, PageID 140). The trial court found Mr. Singleton not guilty of rape, guilty of gross sexual imposition, and guilty of kidnapping with specifications of sexual motivation and sexually violent predator. (*Id.*, Exh. 8, PageID 143). The court entered a *nunc pro tunc* entry deleting reference to the kidnapping conviction's sexually violent predator specification. (*Id.*, Exh. 11, PageID 153).

4

Through his trial counsel, on August 11, 2015, Mr. Singleton filed a Motion for Judgment of Acquittal pursuant to Rule 29(C) of the Ohio Rules of Criminal Procedure. (*Id.*, Exh. 9, PageID 144-50). The trial court denied Mr. Singleton's motion on August 19, 2015. (*Id.*, Exh. 10, PageID 152).

Sentencing proceeded on September 1, 2015. The court determined the two crimes of which Mr. Singleton was convicted were allied offenses of similar import and the State elected to proceed with sentencing on the kidnapping conviction. (*Id.*, Exh. 12, PageID 154). The court sentenced Mr. Singleton to life with the possibility of parole after fifteen years. (*Id.*). The trial court also designated new counsel to represent Mr. Singleton on appeal. (*Id.*)

**Direct Appeal and Post-Conviction Relief**

On September 4, 2015, Mr. Singleton, through his new appellate counsel, filed a Notice of Appeal. (*Id.*, Exh. 13, PageID 155). Mr. Singleton filed his Merits Brief with the Eighth District Court of Appeals on January 6, 2016, setting forth five Assignments of Error, as follows:

1. The trial court erred, denying the appellant Due Process when the court determined A.S. was incompetent to testify and erred in allowing the introduction of child witness statements under Evid.R. 807.

2. The court violated the appellant's right to Confrontation and Due Process when it improperly allowed the admission of incriminating and impermissible hearsay statements.

3. The appellant was denied effective assistance of counsel in violation of Amendments VI and XIV, United States Constitution; and Article I, Section 10, Ohio Constitution when counsel failed to effectively cross examine the State's expert witness and failed to pursue the defense that the alleged child victim suffered from self-inflicted injuries while itching, after the SANE nurse revealed evidence that such a condition may have existed.

4. The appellant was denied Due Process when the State asserted to the court incorrect sentencing alternatives, resulting in the imposition of a longer sentence without consideration of a shorter sentence alternative.

5. Appellant's convictions are against the manifest weight of the evidence.

5

(*Id.*, Exh. 14, PageID 162-89).

The State filed its Brief of Appellee on February 29, 2016, in which it responded to all of Mr. Singleton's Assignments of Error. (*Id.*, Exh. 15, PageID 191-225). It does not appear that Mr. Singleton's appellate counsel filed a Reply Brief. (*See generally id.*)

On June 30, 2016, the Eighth District Court of Appeals issued its Opinion affirming the convictions and sentence. *Singleton*, 69 N.E.3d at 118; *see also*, State Court Record, ECF #10-1, Exh. 16, PageID 226-44. On November 8, 2016, the trial court received a letter from Mr. Singleton inquiring whether his attorney at the trial court level filed an appeal. (State Court Record, ECF #10-1, Exh. 17, PageID 245). On November 15, 2016, the court bailiff mailed a copy of the Eighth District Court of Appeals Opinion to Mr. Singleton, and the trial court confirmed this in a docket entry the following day. (*Id.*, Exh. 18, PageID 246).

On September 11, 2017, again through his appellate counsel, Mr. Singleton filed a Motion for Leave to File Motion for New Trial Pursuant to Crim.R. 33. (*Id.*, Exh. 22, PageID 280). As the basis for his motion, Mr. Singleton claimed the State's main witness, Lula Bogard, perpetrated a fraud on the court by lying under oath. (*Id.*). Mr. Singleton cited newly discovered evidence of Ms. Bogard's untreated mental illness. (*Id.*). He argued that "[h]ad Mr. Singleton been aware of the mental condition of Lula Bogard prior to trial, he could have impeached her ability to testify truthfully based on her deficiencies and could have offered the Court an explanation for the origin of the allegations." (*Id.*).

The trial court issued its Opinion and Journal Entry denying Mr. Singleton's motion on October 20, 2017. (*Id.*, Exh. 24, PageID 326-32). The trial court determined that Mr. Singleton's motion was filed well outside the 120-day deadline imposed by Ohio R. Crim. P. 33 and did not

6

demonstrate, by clear and convincing evidence, that he was "unavoidably prevented from discovering the evidence relied upon to support his motion for new trial." (*Id.*, Exh. 24, PageID 328).

On June 5, 2018, Mr. Singleton filed a "Brady Motion" with the trial court, requesting an order for the prosecuting attorney to "turn over evidence favorable to the defendant." (*Id.*, Exh. 25, PageID 334). The court construed Mr. Singleton's motion as one for post-conviction relief and denied his request. (*Id.*, Exh. 26, PageID 337).

Mr. Singleton filed a Notice of Appeal to the Ohio Supreme Court along with Motion for Delayed Appeal on June 21, 2018. (*Id.*, Exhs. 19, 20, PageID 247, 249). In his motion for delayed appeal, Mr. Singleton asserted he did not file a timely Notice of Appeal to the Ohio Supreme Court because the "Cuyahoga County Public Defenders Office picked up this case and then investigated it and decided not to take it . . . ." (*Id.*, Exh. 20, PageID 249). He set forth two Propositions of Law:

> Ineffective assistance of counsel. Counsel failed to cross examine any thing [*sic*] about the medical records to hereby prove the defendant's innocents [*sic*].
>
> Purjury [*sic*] because the main witness gave false information. Basically, Miss Bogard she gave 12 different statements, and counsel failed to impeach her on any one of the statements and also failed to impeach her about the 12 statements...from page 10-12. Finally, Miss Bogard had mental health issues, she was diagnost [*sic*] with bi-polarizm [*sic*], depression, & anxiety disorder which inabled [*sic*] her to tell the truth.

(*Id.*, Exh. 20, PageID 260, 263). The Ohio Supreme Court denied his motion for delayed appeal on August 15, 2018. (*Id.*, Exh. 21, PageID 279). On August 20, 2018, Mr. Singleton filed another Motion for Post-Conviction Relief. (*Id.*, Exh. 27, PageID 338). The court denied his motion as untimely. (*Id.*, Exh. 28, PageID 339).

7

**FEDERAL HABEAS CORPUS**

Mr. Singleton's Petition sets forth twelve grounds for relief, as follows:

1. The evidence presented at trial was insufficient to prove petitioner's guilt beyond a reasonable doubt. The SANE nurse repeatedly expressed doubt in her own statements.

2. Petitioner was denied his right to effective assistance of counsel as guaranteed by the 6th Amendment. Counsel failed to expose the SANE nurse's doubts.

3. The SANE nurse's testimony was not expressed as a probability and was therefore inadmissible.

4. The victim's statements did not meet the requirements to be hearsay exceptions (Ohio R. Evid. 807).

5. Petitioner was denied his right to effective assistance of counsel as guaranteed by the 6th Amendment. Counsel did not cross-examine the child during the competency hearing.

6. Petitioner was denied his right to effective assistance of counsel as guaranteed by the 6th Amendment. The victim's mother's testimony was inconsistent with the police reports.

7. Petitioner was denied his right to effective assistance of counsel as guaranteed by the 6th Amendment. Counsel failed to question police officer about relationship with victim's mother.

8. The social worker's entire testimony was heresay [*sic*]. He should not have been allowed to testify at all. Petitioner was denied his right to confront witnesses and was denied a fair trial.

9. Petitioner was denied his right to effective assistance of counsel. Counsel did not obtain a medical expert to identify the victim's white discharge.

10. Petitioner received ineffective assistance of counsel. Counsel should have impeached the social worker about "tapping" on the victim's leg.

11. New evidence obtained after trial reveals that the State's main witness, the victim's mother, was incompetent to testify.

12. Judge should not have looked at case law when determining petitioner's guilt or innocence.

(Petition, ECF #1-3, PageID 23-48).

**STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), state prisoners may seek federal habeas relief on the ground that they are being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Federal habeas corpus relief does not lie for errors of state law. *Pulley v. Harris*, 564 U.S. 37, 41 (1984).

The AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's

9

ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

### PROCEDURAL BARRIERS TO HABEAS REVIEW

Before a federal court will review a Petition's merits, the petitioner must overcome several procedural hurdles: exhaustion, procedural default, and time limitation.

Ordinarily, the petitioner must first exhaust available state court remedies before seeking habeas relief. 28 U.S.C. §§ 2254(b), (c). The requirement is satisfied after the petitioner fairly presents all claims to the highest court in the state where petitioner was convicted, thus giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Wilson v. Mitchell*, 498 F.3d 491, 498-99 (6th Cir. 2007). Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim. *Wagner v. Smith,* 581 F.3d 410, 414 (6th Cir. 2009). Each claim must be presented to the state courts as a federal constitutional claim. *Koontz v. Glossa,* 731 F.2d 365, 369 (6th Cir. 1984). Moreover, the claim must be presented to the state courts under the same legal theory in which it is later presented in federal court. *Wong v. Money,* 142 F.3d 313, 322 (6th Cir. 1998). Failure to exhaust applies where state remedies are still available at the time of the petition in federal court. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006), *citing Engle v. Isaac,* 456 U.S. 107, 125 n.28 (1982).

The procedural default doctrine applies where state remedies are no longer available. *Id.* This doctrine bars federal habeas review of federal claims that a state court declined to address because the petitioner did not comply with a state procedural requirement. *Wainwright v. Sykes,* 433

U.S. 72, 87 (1977). Procedural default may occur in two ways: (1) when a petitioner fails to comply with state procedural rules in presenting his claim to the appropriate state court, and the state court enforced that rule and declined to reach the merits of petitioner's claims, *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1996); and (2) a petitioner fails to raise a claim in state court, and no longer has a remedy available to him to exhaust his claims. *O'Sullivan*, 526 U.S. at 848.

A petitioner may overcome procedural default by demonstrating cause, *i.e.*, a legitimate excuse for the default, and prejudice, *i.e.*, actual harm resulting from the alleged constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). Another avenue by which a petitioner may overcome procedural default is by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Id.* at 750; *Murray v. Carrier*, 477 U.S. 478, 495 (1986). A "fundamental miscarriage of justice" occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A valid actual innocence claim must be supported by new evidence not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Id.* at 315. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

The final procedural hurdle to reviewing a habeas claim on the merits is the statute of limitations. The AEDPA imposes a one-year limitations period that begins to run from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United

11

>>States is removed, if the applicant was prevented from filing by such State action;
>
>(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The statute of limitations is not jurisdictional; rather, it is an affirmative defense that a party must raise in the first responsive pleading. *Scott v. Collins*, 286 F.3d 923, 927-28 (6th Cir. 2002). Though not jurisdictional, when the state asserts it and the petition is late, the district court should dismiss the case. *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *see also McCray v. Vasbinder*, 499 F.3d 568, 577 (6th Cir. 2007) (reversing order granting habeas relief because the "gateway requirements" for excusing a time-barred petition—*i.e.*, equitable tolling and actual innocence—had not been satisfied).

Under § 2244(d)(2), the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. A claim is tolled under § 2244(d)(1)(A) if the state court grants the petitioner's motion for delayed appeal. *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009). But a petitioner's claim is not revived if the state court declines to grant petitioner's motion for delayed appeal. *Id.*; *see also Johnson v. United States*, 457 F. App'x 462, 466 (6th Cir. 2012) (applying *Jimenez* and holding that "the filing of a 'motion for delayed appeal' under the Ohio Supreme Court Rules of Practice d[oes] not delay the running of the one-year statute of limitations. . . .").

12

The limitations period is also subject to equitable tolling. A petitioner seeking equitable tolling bears the burden of establishing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010).

A showing of actual innocence also serves to toll the limitations period. *Souter v. Jones*, 395 F.3d 577, 597 n.12 (6th Cir. 2005). Courts apply the same actual-innocence standard developed in *Schlup*, requiring the petitioner to present new reliable evidence to "show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *McCray*, 499 F.3d at 571, *quoting Schlup*, 513 U.S. at 327. The exception is rare and only applied in extraordinary cases. *See Schlup*, 513 U.S. at 321; *see also Souter*, 395 F.3d at 590.

## DISCUSSION

**Statute of Limitations**

Respondent argues Mr. Singleton's petition, filed February 1, 2019, should be dismissed as time-barred under the one-year statute of limitations set forth in § 2244(d)(1)(A). (ECF #10, PageID 78). Mr. Singleton argues he has set forth a credible showing of actual innocence to overcome the limitations period. (Traverse, ECF #12, PageID 759). I conclude Mr. Singleton has not shown he is entitled to statutory or equitable tolling, nor has he made a sufficient showing of actual innocence to support tolling the statute of limitations; therefore, I recommend the court dismiss the petition as time-barred under the statute of limitations.

The Eighth District Court of Appeals issued its Opinion affirming Mr. Singleton's conviction and sentence on June 30, 2016. *Singleton*, 69 N.E.3d at 118; *see also*, State Court Record, ECF #10-1, Exh. 16, PageID 226-44. The deadline to file a Notice of Appeal to the Ohio

13

Supreme Court passed on August 14, 2016, forty-five days after the Eighth District issued its Opinion. *See* S.Ct.Prac.R. 7.01(A)(1). The Ohio Supreme Court denied his petition for delayed appeal on August 15, 2018. (State Court Record, Exh. 21, PageID 279). Accordingly, the federal habeas statute of limitations began to run on August 15, 2016 and expired on August 15, 2017.

Mr. Singleton did not file his Petition until February 1, 2019, which is one and a half years after the deadline. (Petition, ECF #1). During the one-year limitations period, Mr. Singleton did not properly file for post-conviction relief or collateral review such that the limitations period could be statutorily tolled. Additionally, Mr. Singleton has not argued that he is entitled to, nor alleged any facts conceivably entitling him to, equitable tolling.

Mr. Singleton claims he has made a credible showing of actual innocence, citing Grounds One, Nine, and Ten of the Petition. But none of those claims offer new evidence not presented at trial. A review of the entire Petition reveals that Ground Eleven puts forth new evidence, namely: a Complaint for Neglect and Protective Supervision filed in the Juvenile Division of the Cuyahoga Court of Common Pleas, dated October 27, 2016. (State Court Record, ECF #10-1, PageID 268). This Complaint alleges that Ms. Bogard has "untreated mental health problems, specifically post-traumatic stress disorder, bipolar disorder, depression, and anxiety, that inhibits her ability to consistently provide adequate care for the children." (*Id.*). Mr. Singleton argues Ms. Bogard's untreated mental health conditions "cast[] significant doubt on the trustworthiness of her claims against [him]" and "had the Court been aware of Ms. Bogard's mental illness, the Court would have been less inclined to believe her testimony." (Petition, ECF #1, PageID 46).

This evidence, together with the evidence presented at trial, does not establish that is it more likely than not that no reasonable juror would have found Mr. Singleton guilty beyond a reasonable doubt. At trial, the sexual assault nurse examiner testified about her findings of

14

redness, swelling, and tissue damage to the victim's genitalia, all of which were consistent with digital touching. A social worker testified the child-victim pointed to the vaginal area on a drawing and disclosed that Mr. Singleton touched her there with his finger.

The Complaint, on the other hand, does not establish when Ms. Bogard was diagnosed with the identified mental health conditions, whether she suffered from those conditions at the time of trial, or the effect, if any, those conditions may have had on her ability to testify truthfully. Mr. Singleton seems to argue the mere presence of untreated mental health conditions is reason enough to discredit Ms. Bogard's testimony wholesale. The argument, however, is unavailing because the evidence does nothing to contradict the physical evidence of digital penetration or the child-victim's own disclosure.

The vague and inconclusive possibility that Ms. Bogard suffered from untreated mental health conditions at the time of her testimony at trial does not cast sufficient doubt on her testimony or the other evidence such that no reasonable juror would have convicted Mr. Singleton. Mr. Singleton filed his petition one and half years after the deadline by which to file had passed. The State asserted in its first responsive pleading the petition was filed after the statute of limitations had expired and Mr. Singleton has not demonstrated he is entitled to statutory or equitable tolling. Accordingly, his petition should be dismissed as time-barred under the AEDPA's statute of limitations.

### MOTIONS TO SUPPLEMENT THE RECORD

Mr. Singleton filed motions to supplement the record with a copy of the first and second page of the Respondent's Return of Writ and a copy of a page from the State trial transcript (ECF #29, Exh. 1), eight pages of a police report related to Mr. Singleton's underlying convictions (ECF #31, Exh. 1), and a request for the court to view the videotape of the trial to see how Ms. Bogard's

15

statements to the police were inconsistent (ECF #32). Because Mr. Singleton's Petition is time-barred, I recommend the motions to supplement the record be denied as moot.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, I recommend the Petition be **DISMISSED** and the subsequent motions to supplement the record be **DENIED AS MOOT**. I further recommend that Mr. Singleton not be granted a certificate of appealability.

Dated: <u>August 30, 2021</u>

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

***ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time **WAIVES** the right to appeal the Magistrate Judge's recommendation. See <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).*